UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JOE HUNSINGER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:16 CV 162 DDN |
| GORDMANS, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the court upon the motion of defendant Gordmans, Inc., for summary judgment. (ECF No. 26). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court heard oral argument on November 22, 2016.

The court concludes that plaintiff has standing to bring this action and defers deciding defendant's motion for summary judgment until after further discovery.

## I. BACKGROUND

The record indicates that, for the purposes of the pending matters, the following facts are not disputed. In October 2013, the user of telephone number (918) 261-4235 gave defendant consent to send that number marketing text messages. (ECF No. 26, Ex. 1, ¶ 5). Plaintiff has been a customer of Cricket Wireless since 2015, and one of his Cricket telephones was assigned (918) 261-4235. (*Id.* at ¶¶ 1, 3). The subscription for this number included unlimited nationwide talk and text. (*Id.* at ¶ 29). Between December 14, 2015, and February 27, 2016, plaintiff received a number of text messages advertising the sale of defendant's goods and offering coupons for such goods. (ECF No. 26, Ex. 2). In his complaint, plaintiff alleges that he did not consent to receive such text messages from defendant. (ECF No. 1, ¶ 13). According to plaintiff's deposition, he

uses his phones to stream music and internet videos for personal leisure and entertainment. (ECF No. 26, Ex. 1, ¶ 36). He does not want to get any text messages because they interrupt his streaming of music and internet videos. (*Id.* at ¶ 37). He finds receiving text messages to be "aggravating." (*Id.* at ¶ 38). Plaintiff was not offended by the content of the text messages from defendant nor did he lose sleep as a result of receiving the text messages. (*Id.* at ¶¶ 33, 35). He did not require medical or psychiatric treatment, suffer mental or emotional distress, or suffer any physical ailments as a result of receiving the text messages. (*Id.* at ¶¶ 31, 32, 34). Plaintiff was not charged for any text messages received by (918) 261-4235, including the text messages from defendant. (*Id.* at ¶ 30).

Defendant alleges that it sent the text messages using the mGage platform. (*Id.* at ¶ 7). It states that it uploaded the telephone numbers it acquired through inbound campaigns, including plaintiff's number, to the platform. (*Id.* at ¶ 8). It states that a human must input phone numbers into the system, generate a text message, test the message, and then submit the message to identified recipients. (*Id.* at ¶¶ 8-21). The mGage platform is capable of being configured to send messages in the future on a particular date and time. (*Id.*)

On February 8, 2016, plaintiff commenced this putative class action under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, alleging that his and the class members' privacy had "been improperly invaded and they were charged for the texts and they were annoyed." (ECF No. 1, ¶ 15). More specifically, plaintiff alleges defendant violated § 227(b)(1)(A)(iii), which prohibits "any person . . . [from making] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . , unless such call is made solely to collect a debt owed to or guaranteed by the United States." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

## II. <u>MOTION FOR SUMMARY JUDGMENT</u>

Defendant argues it is entitled to summary judgment because (1) plaintiff lacks Article III standing and (2) defendant did not use an automatic telephone dialing system (ATDS) and so did not violate the TCPA. Plaintiff responds that he has Article III standing and that defendant's substantive motion for summary judgment is premature. Even when considered on the merits, plaintiff argues that genuine issues of material fact remain as to whether defendant used an ATDS and violated the TCPA.

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate "if there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party." *Shrable v. Eaton Corp.*, 695 F.3d 768, 770 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Thereafter, the burden shifts to the non-moving party to demonstrate that disputes of fact exist. *Id.* If the party opposing the motion for summary judgment shows that "it cannot present facts essential to justify its opposition, the court may . . . allow time . . . to take discovery." Fed. R. Civ. P. 56(d).

### B. Article III Standing

Article III, section 2, of the Constitution limits the federal judiciary to exercising jurisdiction to actual cases or controversies. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The case or controversy requirement is expressed in the requirement that a claimant in federal court have standing to sue. *Id.* In order to have constitutional standing under Article III, a plaintiff must have suffered an injury in fact, the injury must be fairly traceable to the defendant's actions, and the injury must be able to be redressed by a favorable judicial decision. *Id.* The plaintiff bears the burden of establishing these elements. *Id.* Defendant argues that plaintiff does not have Article III standing because he did not suffer a legally sufficient injury and, if there was an injury, it is not traceable to a TCPA violation by defendant.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (citations omitted). An injury is "concrete" when it actually exists and is "real" and not "abstract." *Id.* An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way." *Id.*

While Congress may create statutory causes of action, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48 (citing *Raines v. Byrd*, 521 U.S. 811, 820 n. 3 (1997)). Article III standing requires a concrete injury even in the context of a statutory violation. Plaintiff has alleged that he and the class were damaged in that their privacy was invaded, they were charged for texts, and they were annoyed. (ECF No. 14, ¶ 1). He has stated that he uses his phone to stream music and video and receiving texts interrupts this entertainment, making him aggravated. (ECF No. 26, Ex. 2). Plaintiff, however, was not personally charged for texts, he was not offended by the content of the text messages, and he did not he lose sleep as a result of receiving the text messages. (*Id.* at Ex. 1, ¶¶ 33, 35). He did not require medical or psychiatric treatment, suffer mental or emotional distress, or suffer any physical ailment as a result of receiving the text messages. (*Id.* at ¶¶ 31, 32, 34). Plaintiff's particularized claim, then, is really only that the text messages invaded his privacy and were annoying to him.

The Supreme Court's opinion in *Spokeo* is the Court's most recent articulation of the test for the "injury" required for Article III standing when Congress creates a private right of action.

> In determining whether an intangible harm constitutes injury in fact . . . [i]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.

*Spokeo*, 136 S. Ct. at 1549 (citations omitted).

First, historically, the invasion of privacy has traditionally been regarded as providing a basis for a lawsuit in American courts. In the Eighth Circuit's post-*Spokeo* case, *Braitberg v. Charter Communications, Inc.*, claimant did not have standing when his allegations indicated a statutory right under the Cable Communications Policy Act (CCPA) but did not satisfy a traditional common-law claim for invasion of privacy. 2016 WL 4698283, at *4 (8th Cir. Sept. 8, 2016). In that case, the plaintiff alleged that Charter had retained his personally identifiable information in violation of the CCPA. *Id.* The Eighth Circuit held that "the retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts." *Id.* Here, however, plaintiff Hunsinger has alleged a privacy claim of an entirely different variety: unreasonable intrusion upon the seclusion of another, a tort long recognized in American jurisprudence. Restatement (Second) of Torts §§ 652A, 652B (1977).

Under the Restatement, a defendant may be liable for an intrusion upon seclusion if the intrusion would be highly offensive to a reasonable person. *Id.* at § 652B. No mental or physical symptoms need be alleged. *Id.* Unwanted phone calls may constitute an invasion of privacy, though it is generally a question for the jury as to whether they are so intrusive that they would be highly offensive to a reasonable person. *See, e.g., Sofka v. Thal,* 662 S.W.2d 502, 510, 511 (Mo. 1983). The Restatement (Second) of Torts has noted "[i]t is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded." Restatement (Second) of Torts § 652B at comment d. Missouri courts have recognized the receipt of multiple phone calls a day for several weeks to be an invasion of privacy. *See, e.g., Philips v. Citimortgage, Inc.,* 430 S.W.3d 324, 331 (Mo. App. Ct. 2014); *but see Sofka,* 662 S.W.2d at 510, 511 (finding six phone calls over the course of several months was insufficient as a matter of law to establish the tort of invasion of privacy). Accordingly, even if the frequency of the text messages might be insufficient to state an independent tort claim for invasion of privacy, the type of injury plaintiff has alleged in this case constitutes an injury under the

first consideration of the Supreme Court's test: it "has a close relationship" to a traditionally recognized harm. *Spokeo*, 136 S. Ct. at 1549.

Additionally, in enacting the TCPA, Congress found that telemarketing is highly offensive to the reasonable person, concluding that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers," and that "[e]vidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Pub. L. 102-243, 105 Stat. 2394, §§ 6, 10 (Dec. 20, 1991). This conduct may be less frequent than that required for an independent, traditional invasion of privacy tort claim. However, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Spokeo*, 136 S. Ct. at 1549.

Congress also determined that unrestricted telemarketing "can be an intrusive invasion of privacy." Pub. L. 102-243, 105 Stat. 2394, § 2(5) (Dec. 20, 1991). Accordingly, Congress enacted the TCPA to regulate telemarketing and protect consumers. 47 U.S.C. § 227. It created a private right of action for enforcement of violations of the statute. *Id.* at § 227(b)(3). Unlike the statute at issue in the *Braitburg* case, which only permits recovery of actual damages for violations of the statute, the TCPA allows a plaintiff to elect liquidated damages in the amount of $500 for each violation instead of the actual monetary loss. 47 U.S.C. § 227(b)(3). *See also Braitburg*, 2016 WL 4698283, at *4; 47 U.S.C. § 551(f). The invasion of privacy is the harm the TCPA is designed to remedy, and Congress accordingly created a fixed recovery amount instead of only permitting a claim for actual damages.

Congress noted in the House and Senate reports associated with the passage of the TCPA that each time a telephone line is tied up with a call, it is "seized" for the duration of the call. *See* H.R. REP. NO. 102-317, 10 (1991); S. REP. NO. 102-178, 2 (1991). This is similar to the injury alleged by plaintiff. Courts have repeatedly recognized that the receipt of a single unwanted text message, even when the plaintiff does not receive an

additional charge for the message received, constitutes a concrete injury sufficient to create standing under the TCPA. *See, e.g., Cour v. Life360, Inc.*, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016); *Meyer v. Bebe Stores, Inc.*, 2015 WL 431148, at *2 (N.D. Cal. Feb. 2, 2015); *Smith v. Microsoft Corp.,* 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012). These courts have noted that unwanted text messages waste time, invade privacy, and invade the private property of a plaintiff's cell phone. This court agrees.

Plaintiff has alleged he received unwanted text messages that invaded the private property of his phone, that wasted his time and made him aggravated, and that interrupted his use and enjoyment of the phone. He has sufficiently alleged an injury in fact.

Defendant also argues that this injury is not traceable to a TCPA violation. Even if plaintiff testified in his deposition that all text messages he receives, regardless of the source, are unwanted and annoying, not just the ones he received from defendant, Article III does not require a showing of proximate causation, only a "causal connection between the injury and the conduct complained of" that is "fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Balogh v. Lombardi*, 816 F.3d 536, 543 (8th Cir. 2016) (citations omitted). Plaintiff has alleged that defendant sent him unwanted text messages and that these messages caused the above inconveniences. No more is required to satisfy the traceability prong.

For these reasons, the court concludes that plaintiff has standing to bring this action.

    C.    **Defendant's Use of an ATDS**

Defendant also moves for summary judgment on the basis that it did not use an automatic telephone dialing system to send the text messages at issue. Plaintiff argues that this motion should be denied without prejudice as premature, because discovery is not yet complete. The Case Management Order in this case, issued July 26, 2016, instructs the parties to file Article III standing motions by October 14, 2016, and allows motions to be made related to the plaintiff's individual and class claims "on or before"

May 22, 2017. (ECF No. 22, ¶ 5). It instructs the parties to complete all discovery on plaintiff's individual claims by September 30, 2016; merits and class fact discovery by January 31, 2017; and expert discovery by April 24, 2017. (*Id.* at ¶ 3). Defendant filed its motion for summary judgment promptly within the court's schedule.

Although discovery need not be complete before a motion for summary judgment is filed, summary judgment is appropriate only after the nonmoving party has had an adequate opportunity to conduct discovery. *Robinson v. Terex Corp.,* 439 F.3d 465, 467 (8th Cir. 2006). The nonmoving party must make a showing that discovery has been inadequate. *Pony Computer, Inc. v. Equus Computer Sys. of Missouri, Inc.,* 162 F.3d 991, 996 (8th Cir. 1998). Rule 56 allows a party to request a delay in the court's consideration of a motion for summary judgment upon a good-faith showing that postponement of the ruling would enable it to discover additional evidence that might be relevant to the issue of whether there remains a genuine issue of material fact. Fed. R. Civ. P. 56(f).

The question at issue is whether the mGage platform Gordmans used to send the text messages constitutes an ATDS. The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA does not define what conduct "call" encompasses, but the FCC in administering the statute has stated that "the prohibition on using [ATDSs] to make calls to wireless phone numbers applies to text messages (e.g., phone-to-phone SMS), as well as voice calls." *In the Matter of Rules and Regulations Implementing the Controlling the Assault of Non–Solicited Pornography and Marketing Act of 2003; Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 19 FCC Rcd. 15927, 15934 (FCC August 12, 2004). The same is true of internet-to-phone text messaging. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 8020 (July 10, 2015).

The FCC has also stated that in order to be considered an ATDS, "equipment need only have the *capacity* to store or produce telephone numbers." *In re Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14092 (July 3, 2003) (emphasis in original). The FCC has noted that while technology has evolved since the TCPA's enactment in 1991, "[t]he basic function of [ATDSs] has not changed—the *capacity* to dial numbers without human intervention." *Id.* (emphasis in original). The FCC has identified predictive dialers as ATDSs. This "hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* at 14091. The FCC has stated that "Congress intended a broad definition of autodialer." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 7974 (July 10, 2015). The FCC has repeatedly held that the basic functions of an autodialer are (1) "to dial numbers without human intervention" and (2) "to dial thousands of numbers in a short period of time." *Id.* at 7975 (citations omitted). In addressing the first function, the FCC has stated that "[h]ow the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination." *Id.* As to the second function, defendant has not produced evidence as to how many messages were sent at a time.

After reviewing the substantive arguments made about the platform Gordmans used to send the promotional text messages to plaintiff, the court concludes that plaintiff has made a good-faith showing that further factual investigation and expert testimony may reasonably be relevant to defendant's argument that its platform was not an ATDS. Defendant has argued that human intervention was required to send the text messages at issue, and that the platform Gordmans used is therefore not an ATDS. Plaintiff argues that he has not yet been able to depose defendant's declarants and requests more time to have an expert review defendant's arguments about the technology used to send the text messages to his phone, such as how many messages could be sent at a time. (ECF Nos. 29, 32).


The court concludes that an opportunity for further discovery is reasonable before the court rules whether or not defendant is entitled to summary judgment on the ATDS issue.

## III.  ORDER

For these reasons,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment on the ground that plaintiff lacks Article III standing is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment on the ground that it did not use an ATDS to send the text messages at issue is **deferred.** Plaintiff may have until **February 17, 2017,** to engage in further discovery and to file a supplemental response to the pending summary judgment motion**.**  Defendant may have 30 days thereafter to file a reply.

      /S/   David D. Noce  
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 5, 2016.